## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| QIAN HAOCHENG, | ) | 3:23-cv-00513 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YOUTUBE, INC., AND GOOGLE, INC., | ) | |
| *Defendants*. | ) | March 28, 2024 |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Qian Haocheng, proceeding *pro se*, brings claims for breach of contract against Defendant YouTube, Inc., and its parent company Defendant Google, Inc., after YouTube removed his video content from the platform. Defendants moved to dismiss Plaintiff's amended complaint for failure to state a claim under the applicable Terms of Service, which the Court converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). For the following reasons, Defendants' motion for summary judgment is GRANTED.

## I.     FACTUAL BACKGROUND[1]

Plaintiff is a Chinese dissident who lives in Connecticut and operated seven YouTube channels about politics, faith, and science and technology, from approximately May 26, 2020, through at least May of 2023. *See* Haocheng Affirm., ECF No. 44 ¶¶ 2–3; Am. Compl., ECF No. 29 ¶¶ 14(1), 17.

---

[1] Because the Court converted Defendants' motion to dismiss to one for summary judgment, neither party submitted the customary Local Rule 56 statement. Instead, both parties filed affirmations and accompanying exhibits. As described below, the Court does not find that any of the parties' evidence is in conflict, and the parties agree on all material facts. But where there is a gap in the evidence, such as when Plaintiff introduces evidence which Defendant has not directly addressed, the Court takes note and draws all reasonable inferences in Plaintiff's favor, as the nonmovant. *See Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021). The Court also references allegations in Plaintiff's amended complaint where relevant.

Plaintiff operated the YouTube channels pursuant to YouTube's Terms of Service. ECF No. 44 ¶ 4; Am. Compl. ¶ 7. The relevant provision, titled "Removal of Content by YouTube," provides that:

> If any of your Content (1) is in breach of this Agreement or (2) may cause harm to YouTube, our users, or third parties, we reserve the right to remove or take down some or all of such Content in our discretion. We will notify you with the reason for our action unless we reasonably believe that to do so: (a) would breach the law or the direction of a legal enforcement authority or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates.

Defs.' Ex. D, YouTube Terms of Service, ECF No. 41-5 at 11; ECF No. 44 ¶ 5 (stating that Defendants' Exhibit D reflects the valid terms from January 4, 2022, to present); *see also* Defs.' Ex. A through Ex. C, ECF No. 41-2 through 41-4 (YouTube's Terms of Service containing an identical provision from December 19, 2019, through present). The YouTube Terms of Service expressly incorporate YouTube's Community Guidelines, which provide further that:

> If our reviewers decide that content violates our Community Guidelines, we remove the content and send a notice to the Creator. The first time a Creator violates our Community Guidelines, they receive a warning with no penalty to the channel. After one warning, we'll issue a Community Guidelines strike to the channel and the account will have temporary restrictions. Channels that receive three strikes within a 90-day period will be terminated. Channels that are dedicated to violating our policies or that have a single case of severe abuse of the platform, will bypass our strikes system and be terminated. All strikes and terminations can be appealed if the Creator believes there was an error, and our teams will re-review the decision.

Defs.' Ex. E, YouTube Community Guidelines, ECF No. 41-6 at 4 (in effect from 2020 to November 2022); ECF No. 41-5 at 5 ("Your use of the Service is subject to these terms, the YouTube Community Guidelines, and the Policy, Safety and Copyright Policies."); *see also* Defs.'

Ex. F, YouTube Community Guidelines, ECF No. 41-7 at 5 (containing near identical provision in effect from November 2022 to May 2023).

Plaintiff also operated as a YouTube "partner," which allows users to profit from videos posted on the platform. The relevant "Right to Monetize" provision in the YouTube Terms of Service states that: "[y]ou grant to YouTube the right to monetize your Content on the Service" and "[t]his Agreement does not entitle you to any payments"; nonetheless, pursuant to the YouTube Partner Program, the user may be entitled to payments that are "treated as royalties." ECF No. 41-5 at 10; *see also* ECF No. 41-3 through 41-4 (containing an identical provision from November 18, 2020, through present); ECF No. 41-2 at 11 (prior provision stating that users "grant to YouTube a world-wide, non-exclusive, royalty free" license).

Plaintiff alleges that on January 24, 2022, his Google account was hacked by the Chinese Communist Party ("CCP"). Am. Compl. ¶ 9. On February 26, 2022, Plaintiff received an email from "yt-partner-support@google.com" stating "our insiders determined that your account had unusual activity (compromised)"; that "the internal team has disabled your Google account"; and that Plaintiff would need to take steps to verify his identify and recover his account. Pl.'s Ex. 2, Feb. 16, 2022, Email, ECF No. 44-2 at 2.[2] Plaintiff claims that, as a result, added restrictions were placed on his account. Am. Compl. ¶ 10.

Later that year, on December 13, 2022, Plaintiff received an email from YouTube that his "Enlightenment Hall (Member Channel)" was no longer eligible to monetize. Pl.'s Ex. 7, Dec. 13, 2022, Email, ECF No. 44-7 at 2–4. The email stated:

> Hi Enlightenment Hall (Member Channel),

---

[2] As to this and the other messages Plaintiff received from YouTube, Plaintiff has provided an affidavit attesting that the messages are accurately translated from Chinese to English. *See* Weizhong Aff., ECF No. 44 at 2–3. Other messages Plaintiff received were automatically translated through Google. *See, e.g.*, ECF No. 44-17 at 4, 6–7, 9, 11, 14. Defendants have not challenged the accuracy of the translations.

> During a recent review, our team of policy specialists carefully looked over the videos you've uploaded . . . We found that a significant portion of your channel is not in line with our YouTube Partner Program policies. As of today, your channel is not eligible to monetize and you will not have access to monetization tools and features. . . . We understand that you may have unintentionally made mistakes. That's why you'll be able to reapply for the YouTube Partner Program in 30 days.

*Id.* Plaintiff responded, arguing that his content did not violate YouTube's policies because it was his own original content, and providing his original video files. Pl.'s Ex. 12, Dec. 19, 2022, Emails, ECF No. 44-12 at 3–4. The account responded that "[u]nfortunately, after an internal team review, we still believe that your channel violates our channel monetisation policies, and we are unable to provide this information for the details of the determination of re-exploitation of others . . . . This will be final, and you will no longer be able to appeal the channel." *Id.* at 6.

On February 28, 2023, Plaintiff received an email from YouTube that his "Don't Forget June 4" channel, a reference to the 1989 Tiananmen Square protests, had been removed. Pl.'s Ex. 6, Feb. 28, 2023, Email, ECF No. 44-6 at 3–4. There is no evidence in the record of prior notice or "strikes" before removal. The email states:

> Dear Don't Forget June Fourth
>
> After reviewing your content, we find that it is serious or repeatedly in violation of our Community Guidelines. We've removed your channel from YouTube for these reasons.
>
> We know this may be frustrating for you, but it's our job to create a safe YouTube platform for all users. If we believe a channel violates our policies egregiously, we'll remove it to protect other users on that platform. However, if you believe that our decision was incorrect, you can appeal it.

*Id.*

Then, in July of 2023, Plaintiff received four cryptic, anonymous emails related to his YouTube channels. *See* Pl.'s Ex. 17, ECF No. 44-17. The emails purport to offer Plaintiff intelligence about the Chinese government, some with an offer of payment, and Plaintiff claims

they are in fact attempts by CCP members to blackmail and bribe him.  For example, one states, "I have inside information about the upcoming comic strip operation against the US election in the United States" and "fifty-five copies of undisclosed scans of declassified documents," and allows Plaintiff "five days" to respond to the email if interested.  *Id.* at 11–12.  Plaintiff thanked the individual for the offer but declined.  *Id.* at 13–14.  Afterwards, Plaintiff's videos were increasingly "flagged" by users which Plaintiff attributes to a coordinated effort by the CCP to increase the likelihood that YouTube would remove his content.  *See id.* at 14–17.

## II.    PROCEDURAL BACKGROUND

On April 24, 2023, Plaintiff, proceeding *pro se*, brought what he termed an "indictment" against Defendants "for economic damages caused by restrictions on speech."  Compl., ECF No. 1.  Defendants moved to dismiss the complaint, and Plaintiff elected to file an amended complaint with the assistance of New Haven Legal Aid Association's Federal *Pro Se* Program, rather than respond to Defendants' motion.  ECF No. 28.

On July 18, 2023, Plaintiff filed the amended complaint against Defendants.  ECF No. 29.  Plaintiff brings one count for breach of contract and states the count is only brought against YouTube, not Google.  *Id.* at 7 ("CAUSE OF ACTION:  BREACH OF CONTRACT (DEFENDANT YOUTUBE)").  Plaintiff claims YouTube's removal of his content without prior notice and without cause—including removal of the profit-making feature of one of his channels—violates YouTube's Terms of Service.  *Id.* ¶¶ 19–20.  Plaintiff also claims that YouTube is acting as an agent of the CCP, and the greater restrictions on his account can be traced back to the alleged January 24, 2022, hacking of his Google account by the CCP.  *See id.* at 7–8, ¶ 10.

Defendants moved to dismiss Plaintiff's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot. Dismiss, ECF No. 36.  Because both

parties presented matters outside the pleadings, the Court converted Defendants' motion to dismiss to one for summary judgment and provided both sides an opportunity to submit additional evidence pursuant to Federal Rule of Civil Procedure 12(d).  Order, ECF No. 39.  In response, both parties submitted an affirmation and additional exhibits.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion to dismiss under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*   The Second Circuit has "stressed a functional approach to conversion, emphasizing that '[t]he district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form.'"  *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)).  "The essential inquiry is whether the [non-movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."  *Id.* (same); *see also Richard Mfg. Co., Inc., v. Richard*, 513 F. Supp. 3d 261, 288 (D. Conn. 2021).  In briefing on Defendants' motions to dismiss, both parties provided different links to websites where the pertinent policies may be found.  Because the Court would need to consider outside evidence and determine which policies were in effect in the timeframe applicable to Plaintiff's claims, the Court converted Defendants' motion to dismiss to a motion for summary judgment and allowed both

parties to submit additional evidence.[3]  Defendants have submitted versions of YouTube's Terms of Service and Community Guidelines in effect for the entire time period.  *See* Hawkins Aff., ECF No. 41-1.  All versions contain identical relevant language, and Plaintiff now does not dispute the validity of any of the terms provided by Defendants.

When the Court converts a motion to dismiss a *pro se* complaint into a motion for summary judgment, it must take added care to ensure the *pro se* plaintiff has "(i) an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion, and (ii) absent a clear indication that he already possessed such understanding, an explanation of the consequence of a grant of summary judgment, as well as what he could do to defeat the motion." *Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009).  Additional discovery would not have been relevant or necessary in this case, given that Plaintiff's claims turn on the terms of the contract provided, which are undisputed, and that Plaintiff submitted affidavits with the evidence he believes supported his claims.  *See* ECF No. 44.  Further, the Court provided Plaintiff formal notice of this conversion, informed him that he may submit additional materials as part of the process, and that there is the possibility his claim would not survive the motion.  *See* ECF No. 39 (noting that, "[i]f any claim survives the motion, the Court w[ould] set a new deadline for submission of the Rule 26(f) report"); *compare Hernandez,* 582 F.3d at 308 (vacating and remanding when district court "ruled that it was unnecessary to provide notice of the conversion of the motion to one for summary judgment because [plaintiff] had already submitted 'extensive affidavits and supporting documents'").  The Court also instructed Plaintiff that he should enlist the assistance

---

[3] The Court recognizes that it may also have been proper to consider YouTube's Terms of Service through the incorporation by reference doctrine, since the complaint referenced them.  *See Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002); *Business Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610 (JGK), 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 947 n.1 (N.D. Cal. 2020).  Because the Court could not be assured that the Terms of Service the parties linked in their filings were applicable at the time of the events alleged by the amended complaint, however, the Court deemed it best to convert the motion to dismiss into a motion for summary judgment.

of a translator when submitting documents, and Plaintiff has complied.  *See* ECF No. 39; ECF No. 44 at 2–4.

The Court is satisfied Plaintiff understood the nature and consequences of the conversion, based on the content of his filings—and particularly in light of the fact that Plaintiff sought and received the assistance of an attorney with the Federal *Pro Se* Program at New Haven Legal Assistance Association with preparing the amended complaint, his initial opposition to the motion to dismiss, and his affidavit in connection with summary judgment, which contained seventeen exhibits.  *See* ECF No. 29 at 1, n.1; ECF No. 38 at 1, n.1; ECF No. 44 at 5 n.1.  The Court also granted Plaintiff's motion for extension of time to submit his summary judgment papers, which also had been prepared with the assistance of the *pro se* program.   ECF No. 42 at 1 n.1. Considering the totality of the circumstances, the Court believes it is fair to adjudicate the parties' filings under Rule 56.  *See M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997) (affirming grant of summary judgment against *pro se* litigant where the record made clear the litigant understood the nature and consequences of summary judgment); *compare McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 2009) (holding plaintiff did not clearly demonstrate understanding of summary judgment process when he only mentioned Rule 56 in passing, and stated he would submit a supporting affidavit but never did).[4]

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the

---

[4] In an abundance of caution, the Court also informs Plaintiff at the conclusion of this ruling that he may file a motion for relief from a judgment under Rule 60(b).

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee*, 12 F.4th at 158 (citation and internal quotation marks

omitted).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

## IV.   DISCUSSION

Initially, the Court is satisfied it has subject matter jurisdiction over this suit, as there is complete diversity between the parties[5] and the complaint alleges that the amount in controversy exceeds $75,000.  *See* Am. Compl. ¶¶ 4–6, 14.

The parties agree that the YouTube Terms of Service, which incorporate the Community Guidelines, form the relevant agreement (together, the "Agreement").  The Terms of Service contain a choice of law clause designating California law as the governing law.  ECF No. 41-2 at 18.  The elements of a breach of contract action under California law are:  "(1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).  The interpretation of a contract is a "judicial function," and the "objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms."  *Brown v. Goldstein*, 34 Cal.App.5th 418, 432 (2019) (cleaned up).

---

[5] Defendants are both Delaware corporations with their principal places of business in California.  Am. Compl. ¶¶ 5–6.  While Plaintiff does not state his current domicile, he alleges he is a "dissident from mainland China" and also that the alleged acts and omissions of Defendants took place in Connecticut.  *Id.* ¶¶ 3–4.  Whether Plaintiff is a citizen of Connecticut or the subject of a foreign state, the Court would have diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1) & (2).

The Court assumes, for purposes of this ruling, that Plaintiff has sufficiently performed his obligations under the Agreement, as Defendants do not challenge this element.  The parties dispute whether YouTube breached the Agreement with Plaintiff when it removed Plaintiff's content allegedly without prior notice or cause.  To answer this question, the Court looks to the plain terms of the Agreement, which it finds to be unambiguous.  *See id.* (stating that under California law, courts may not consider extrinsic evidence if the contract is "clear and unambiguous").  For the following reasons, the Court finds that Plaintiff's breach of contract claim against YouTube fails as a matter of law.

The Agreement does not require that YouTube provide users notice before removing content or that YouTube otherwise have "cause" to do so.  The Terms and Conditions state that, after removal, YouTube will notify the affected user "with the reason for our action" unless one of three exceptions not at issue here applies.  ECF No. 41-5 at 11.  Consistent with this provision, the Community Guidelines state that "[i]f our reviewers decide that content violates our Community Guidelines, *we remove the content and send a notice* to the Creator"—in succession. ECF No. 41-6 at 4.  In addition, the terms are clear that there need be no special "cause" for removal.  Rather, YouTube expressly states "we reserve the right to remove or take down some or all of such Content *in our discretion.*"  ECF No. 41-5 at 11 (emphasis added).  Accordingly, there is no right to prior notice before removal of content and no requirement of cause before removal under Plaintiff's contract with YouTube.  Moreover, to the extent Plaintiff contends YouTube breached some obligation that he be allowed to monetize his content, YouTube's terms provide no entitlement that users can monetize content they previously posted.  *See id.* at 10 ("This Agreement does not entitle you to any payments.").

Plaintiff acknowledges that he received an email notice after removal of the "Don't Forget June Fourth" channel which states that YouTube removed the content because it was "seriously or repeatedly in violation of our Community Guidelines." ECF No. 44-6 at 3. YouTube's Terms and Conditions require it to do nothing further. Because YouTube provided the "reason for its action" after the removal, this is not a situation where there may be a genuine dispute of fact over whether YouTube was excused from this requirement under one of the limited exceptions. ECF No. 41-5 at 11. Moreover, although the Community Guidelines incorporated into the Terms of Service reference a "three-strike system," the Terms of Service reserve YouTube's right to remove content at any time. *See id.* ("[W]e reserve the right to remove or take down some or all of such Content in our discretion."). Therefore, that YouTube may not have given Plaintiff any "strikes" or "warnings" before his content was removed is not dispositive, and Plaintiff's claims for breach of contract fails as a matter of law under the clear and unambiguous terms of the agreement.[6]

For these reasons, other courts have rejected similar claims that YouTube has a contractual obligation to inform individuals before content is removed. For example, in *Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at *8 (N.D. Cal. 2021), the district court rejected a claim "that defendants were required to notify [the plaintiff] of the specific reason for removal of his content or that YouTube's alleged failure to provide such advance notice was inconsistent with its highly discretionary policy described in the Terms of Service." The provision at issue there—identical to the one here—"expressly reserve[d] the option to not provide notification of the reason for removal," and "state[d] that YouTube may remove content in circumstances outside

---

[6] Plaintiff's amended complaint alleges that YouTube agreed to provide him notice of suspected intellectual property infringement and the option to preserve the allegedly infringing work for his private use or deleting the work himself. Am. Compl. ¶ 8. Aside from the three-strikes policy in the Community Guidelines—which specifically reserves the right to remove content even if no previous strikes have been given, consistent with the Terms of Service—Plaintiff has not identified, and the Court has not found, provisions of the agreement that provide Plaintiff the right to preserve his postings or delete them himself.

a violation of the Community Guidelines." *Id.* Like in this case, the plaintiff had been notified *after* removal that YouTube found his content did not comply with its Community Guidelines. *Id.* Accordingly, "[b]ecause defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Id.* (internal quotation marks and citation omitted); *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (holding the Terms of Service in effect in 2015 "unambiguously reserve to YouTube the right to determine whether 'Content violates these Terms of Service' and, 'at any time, without prior notice and in its sole discretion, remove such Content"). For these reasons, YouTube is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

Otherwise, Plaintiff generally claims that Defendants are "[s]uspected of being an agent of the Chinese Communist Party, which is not within the scope of the contract." Am. Compl. ¶ 20(4). Plaintiff does not argue this as a "breach of contract," but rather an example of economic harm he suffered from a result of the "breach" of removing his content. *See* ECF No. 29 at 8. In any event, liberally construing Plaintiff's complaint as bringing a claim for breach of implied covenant of good faith and fair dealing on these facts, such a claim would fail as a matter of law.

Under California law, all contracts have an implied covenant of good faith and fair dealing. *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021). "The covenant 'exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.'" *Id.* (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349 (2000)). It cannot, however, "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* (quoting *Guz*, 24 Cal.4th at 349)). Because all of YouTube's actions were

expressly authorized by the contract's terms, Plaintiff has no cognizable claim for breach of the implied covenant of good faith and fair dealing.

*Lewis* provides an illustrative example.  There, an activist plaintiff similarly had his videos removed from YouTube and alleged that Google and YouTube acted as agents of the Chinese government; not because of a coordinated effort by the CCP, as Plaintiff claims, but because Google and YouTube allegedly assisted China in state-sponsored censorship and intelligence activities.  *See id.* at 946.  The court rejected claims for fraud and breach of implied covenant of good faith and fair dealing based on the allegations that YouTube and Google had facilitated censorship at the behest of a foreign government.  YouTube's Terms of Service had clearly disclosed that it retains the discretion to remove content that violates its policies, even if it has not disclosed its relationship with the Chinese government.  This meant that, for the plaintiff's fraud claim, the plaintiff was unable to "show an omission which contradicts the terms of YouTube's terms and guidelines," *id.* at 960, and that there could be no implied covenant claim because YouTube's removal of the content was "explicitly authorize[d]" by the terms and guidelines, *id.* at 962.

For similar reasons, to the extent Plaintiff's amended complaint is viewed as alleging a breach of the implied covenant of good faith and fair dealing, such claim fails as a matter of law under the undisputed Terms of Service.

## V.      CONCLUSION

For the reasons described in this ruling, YouTube and Google are entitled to summary judgment.[7]  Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to enter judgment for Defendants.

The Court notifies Plaintiff that Federal Rule of Civil Procedure 60(b) provides a procedure for seeking relief from a final judgment for reasons such as excusable neglect or "any other reason that justifies relief."  Any such motion shall be made within a reasonable time and, in certain cases, no more than a year after entry of the judgment.  *See* Fed. R. Civ. P. 60(c)(1).  Plaintiff may wish to consult with the Federal *Pro Se* Program for advice about whether there are grounds to file a Rule 60(b) motion in this instance.

**SO ORDERED** at Hartford, Connecticut, this 28th day of March, 2024.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[7] While Plaintiff has sued both YouTube and Google, his sole cause of action for breach of contract specifies it is brought only against YouTube.  *See* Am. Compl. at 7, ¶¶ 16–20.  Plaintiff alleges he is suing Google because it is the parent company of YouTube, because YouTube is a Google product, and because a user must use a Google account to log in or open a channel on YouTube.  *Id.* ¶ 15.  Under either Connecticut or California law, a parent corporation and its subsidiaries are treated as separate and distinct legal entities.  *See Hess v. L.G. Balfour Co., Inc.*, 822 F. Supp. 84, 86 (D. Conn. 1993); *Davidson v. Seterus, Inc.*, 21 Cal.App.5th 283, 305 (2018).  Because Plaintiff's breach of contract claim against YouTube fails as a matter of law, it need not reach whether Google may be liable for YouTube's breach under a veil-piercing theory of liability.  Google is therefore entitled to summary judgment as well.